UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KAY HOOD ADAMS, et al.                                            PLAINTIFFS

v.                                              CIVIL ACTION NO. 3:14cv615-DPJ-FKB

REGIONS BANK, a/k/a Regions Bank, Inc.; et al.                    DEFENDANTS

ORDER

This diversity case is before the Court on Defendants Regions Bank and Regions Investment Service, Inc.'s ("Regions Trust") (collectively, "Regions") Motion to Dismiss [11] and Motion to Dismiss Intervenor's Complaint [33] pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court, having considered the memoranda and submissions of the parties, along with the pertinent authorities, finds that the Motions [11, 33] should be granted in part. The motions are otherwise denied without prejudice.

I.    Facts and Procedural History

The following averments from the First Amended Complaint ("FAC") are considered true for the purposes of this Rule 12(b)(6) motion. On March 2, 2004, Warren Alton Hood, Sr., died testate, leaving each of his four children 25% of his estate. FAC [6] ¶¶ 6–7. The will placed Plaintiff Kay Hood Adams's quarter of the estate into the "Kay Hood Adams Family Trust" (the "KHAF Trust") for the benefit of Adams and her descendants.[1] *Id.* ¶¶ 8, 10. The will also provided that Adams's quarter of the estate would include Hood's partnership interest in Kay Hood Adams Properties, L.P. ("KHAP")—the interest also to be held by the KHAF Trust. *Id.* ¶ 8. Article X of the KHAF Trust, Plaintiffs contend, created a "Spendthrift Trust," the "primary

---

[1]Adams has three children—Shannon Lee Adams, Nicholas Sean Adams, and Linden Carole Adams Barefield—all of whom are Plaintiffs to this action. FAC [6] ¶ 9.

purpose [of which] was to protect trust assets from claims of creditors of the beneficiaries." *Id.* ¶¶ 11–12.

At the heart of this dispute is Regions account no. 4014000169, which held certain securities owned by KHAP prior to Hood's death (the "Regions Account"). *Id.* ¶¶ 14–15. At some point after Hood's death, the Regions Account, as a liquidated asset of KHAP, became part of the KHAF Trust. Although the Regions Account did not contain Regions Bank stock at the time of Hood's death, *id.* ¶ 15, in April 2008, 292,439 shares of Regions Bank stock were transferred into the Regions Account, allegedly in violation of Regions's internal policy prohibiting such a transfer, *id.* ¶¶ 30–32.

Regions's connection to the KHAF Trust deepened the following month, when Plaintiff Adams took out a personal loan from Regions. Adams was a shareholder, officer, and director of Hazlehurst Lumber Company, Inc. ("Hazlehurst"), a sawmill located in Hazlehurst, Mississippi. *Id.* ¶¶ 16–17. On May 23, 2008, following Hazlehurst's financial difficulties, Adams received a personal loan from Regions to cover Hazlehurst's debt. *Id.* ¶ 21. In order to secure the personal line of credit, Adams pledged the securities held in the Regions Account through a commercial Pledge Agreement. *Id.* ¶ 22. The securities were then worth $7.2 million. *Id.* ¶ 28. Then, at some point prior to February 2010, Regions became the trustee of the KHAF Trust. It is not clear from the record whether Regions became trustee of the KHAF Trust before or after the Regions Account became part of the KHAF Trust, and it is likewise unclear whether the Regions Account was part of the KHAF Trust at the time it became encumbered pursuant to the Pledge Agreement.

Regardless, by July 2011, Regions was trustee of the KHAF Trust, which held the Regions Account, which in turn held Regions Bank stock. That month, Adams discussed with

Regions Trust diversifying the assets of the KHAF Trust, *id.* ¶ 38, but by August 2011, Regions Trust had taken no steps to diversify, *id.* ¶ 40.  Subsequently, Regions Trust disbursed funds from the Regions Account to satisfy Hazlehurst's financial debts, and the stock's value continued to decline.  *Id.* ¶¶ 44–45.  Finally, on November 10, 2011, Regions seized the assets of the Regions Account, thus depleting the KHAF Trust of all value.  *Id.* ¶¶ 50–52.

On August 7, 2014, Plaintiffs filed suit in this Court against Regions for claims of breach of fiduciary duties, negligence, breach of contract, conversion, unjust enrichment, and punitive damages.  Compl. [1].  Plaintiffs subsequently amended their Complaint to add a claim for minority-shareholder oppression.  FAC [6].  Regions then filed its Motion to Dismiss [11], Plaintiffs responded [20], and Regions replied [24].  In addition, Stephen Smith, Chapter 7 Trustee for Adams in her separate bankruptcy action, moved to intervene [10], and, following briefing, the Court granted the motion to intervene, Order [26].  After Smith filed his Intervenor Complaint [28], alleging the same grounds for relief as Plaintiffs, Regions moved to dismiss [33] the Intervenor Complaint as well.  Finally, on April 17, 2015, the Court held a status conference with the parties to discuss issues that arose during the briefing process.  The Court has personal and subject-matter jurisdiction and is now prepared to rule.

II.     Standard of Review

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  To overcome a Rule 12(b)(6) motion, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

Finally, dismissal under Rule 12(b)(6) may be proper "where it is evident from the plaintiff's pleadings that the action is [time] barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (cited in *Jaso v. Coca Cola Co.*, 435 F. App'x 346, 351–52 (5th Cir. 2011) (per curiam) (also citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) ("[T]he inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim."))).

III.    Analysis

    A.    Clarifying the Claims

As noted, Plaintiffs include the following seven counts in the FAC: (1) breach of fiduciary duties (including 12 subparts); (2) minority-shareholder oppression; (3) negligence; (4)

4

breach of contract; (5) conversion; (6) unjust enrichment; and (7) punitive damages. FAC [6]

¶¶ 59–81. Rather than separately addressing these specific causes of action, their legal standards,

and the supporting averments, Regions synthesizes Plaintiffs' theories into the following "six

core allegations":

> a. <u>The Pledge Agreement violated the alleged spendthrift provision</u>: Plaintiffs allege the Pledge Agreement violated the alleged spendthrift provision because it pledged the Trust's assets as collateral for Adams' Loan with Regions. *Id.* ¶¶ 27, 44, 60(a), 60(b).
>
> b. <u>The Pledge Agreement constituted self-dealing</u>: Plaintiffs allege the Pledge Agreement constituted self-dealing because Regions improved its position as a creditor formerly of only Hazlehurst. *Id.* ¶¶ 25, 60(c).
>
> c. <u>The Pledge Agreement created a conflict of interest</u>: Plaintiffs allege Regions created an irreconcilable conflict of interest when Regions took the Trust Account as collateral under the Pledge Agreement and, thereafter, became successor Trustee of the Trust. *Id.* ¶¶ 26, 60(d), 60(e).
>
> d. <u>Failure to follow internal controls</u>: Plaintiffs allege Regions failed to dispose of the Regions Bank stock held in the Trust Account despite its internal policy prohibiting Regions Bank stock from being held and/or managed in a Regions trust account. *Id.* ¶¶ 29–36, 60(f).
>
> e. <u>Failure to diversify and/or dispose of Trust assets</u>: Plaintiffs allege Regions breached its trust obligations by failing to diversify and/or dispose of the assets of the Trust despite the fact that it knew Regions Bank stock was plummeting during the relevant time period. *Id.* ¶¶ 35, 37, 38, 60(g)–(j).
>
> f. <u>Minority shareholder oppression</u>: Plaintiffs allege that Regions' seizure the Trust Account collateral oppressed the rights of Plaintiffs as beneficial owners of Regions Bank stock and caused Plaintiffs to lose their rights as minority shareholders in Regions Bank. *Id.* ¶¶ 53–54, 61–65.

Defs.' Mem. [12] at 7–8 ("Core Allegations"). Predictably, Plaintiffs take issue with this

articulation. *See, e.g.*, Pls.' Resp. [20] at 3. Most notably, they maintain that many of their

claims spring from the actual seizure of the Regions Account rather than the formation of the

Pledge Agreement. *Id.*

The Court agrees that at least some of the claims spring from the Core Allegations. But others do not. And while the Court understands why Regions attempted to simplify the discussion, its articulation of the Core Allegations leaves gaps between the allegations of the FAC and the issues Regions addressed in its memoranda. Moreover, the decision to focus on Core Allegations rather than the actual causes of action leaves the Court without argument more specifically tailored to the legal standards that apply to those causes of action. In sum, it has been difficult to match Regions's arguments with those from the Plaintiffs and then apply them to the actual counts asserted in the FAC.

As a result, the Court held a status conference with the parties in order to clarify some of the issues raised by the briefing. Having discussed these issues with the parties, it is apparent that some of the factual assertions in the FAC need revision or clarification. It is also apparent that Regions has held certain arguments back because they are not appropriate under Rule 12(b)(6). Accordingly, the Court will address the minority-shareholder claim but otherwise deny the motion without prejudice to Regions's right to reassert these issues under Rule 56.

B. Minority-Shareholder Oppression

Plaintiffs assert that Regions's seizure of the Regions Account, which contained shares of Regions Bank stock, was an act of minority-shareholder oppression.[2] Regions argues that the Court must apply Alabama law to this issue because Regions is incorporated under the laws of Alabama. Defs.' Mem. [12] at 15 (citing Miss. Code Ann. § 79-4-15.05(c)). Though Plaintiffs

---

[2]The claim appears in several of the stated Counts. *See, e.g.*, Count I, FAC ¶ 60(l) (asserting breach of fiduciary duty for "[f]ailing to protect Plaintiffs' minority shareholder rights"); Count II, *id.* ¶¶ 61–65 (entitled "Minority Shareholder Oppression").

fail to address the choice-of-law issue, it is not entirely clear that Regions is correct. Regardless, the result would be the same in either state.

The question is whether either state would recognize a minority-shareholder-oppression claim against a publicly traded corporation like Regions. Alabama has expressly recognized minority-shareholder-oppression claims, but only in the context of closely held corporations. *See, e.g.*, *Brooks v. Hill*, 717 So. 2d 759, 766–67 (Ala. 1998). Mississippi has likewise protected minority interests in closely held corporations. *See Brothers v. Winstead*, 129 So. 3d 906, 922 (Miss. 2014) (en banc) ("Alabama, like Mississippi, has held that managers in a closely held corporation owe a duty to act fairly to minority interests."). Regions relies on these authorities.

Plaintiffs contend that *Brooks* and *Brothers* merely arose in the close-corporation context but do not preclude minority-shareholder-oppression claims against publicly held corporations. But both cases reach their holding after distinguishing publicly traded corporations from closely held ones. *See Brothers*, 129 So. 3d at 918 ("[T]he distinctive characteristics and needs of closely held corporations [make] them different from traditional corporations." (internal quotation marks omitted)); *Brooks*, 717 So. 2d at 765–66 (contrasting expectations of minority shareholders in publicly traded and closely held corporations).

Further insight on Mississippi's position can be found in *Fought v. Morris*, where Mississippi first created a cause of action for minority shareholders. 543 So. 2d 167, 171 (Miss. 1989). There, the court went to great lengths to describe why minority shareholders in close corporations—contrasted with those in publicly traded corporations—need additional protection. *Id*. (holding that "in a close corporation where a majority stockholder stands to benefit as a controlling stockholder, the majority's action must be 'intrinsically fair' to the minority

7

interest.") (quoted in *Knights' Piping, Inc. v. Knight*, 123 So. 3d 451, 458 (Miss. Ct. App. 2012) (examining minority-shareholder claim and discussing "'acute vulnerability' of minority shareholders in closely held corporations")).

Plaintiffs have cited no authority recognizing their claim in the proper context. To the extent that Plaintiffs attempt to re-characterize their allegations as claims for breach of the duties of good faith and fair dealing, they mention those duties in their Complaint in passing. *See* FAC [6] ¶¶ 54, 63. However, Plaintiffs offer no authority suggesting that the standards for a claim for breach of these duties as applied to minority shareholders are any different than the standards for an oppression claim standing alone. Plaintiffs likewise fail to aver a separate count based on a breach of those alleged duties. As a result, Plaintiffs' claims for minority-shareholder oppression are dismissed with prejudice.

C. Intervenor's Complaint

Because the Chapter 7 Trustee's claims are derivative of Plaintiffs' claims, his Intervenor Complaint [28] is also dismissed in part with prejudice as to the minority-shareholder oppression claim.

IV. Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, the Court finds that Regions's Motion to Dismiss [11] and Motion to Dismiss Intervenor's Complaint [33] should be granted in part, and Plaintiffs' and Intervenor Plaintiff's claims are dismissed in part with prejudice. Regions's motions are otherwise denied without prejudice.

**SO ORDERED AND ADJUDGED** this the 27th day of April, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE